UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ELLIE O'NEILL-BEAL, )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security,[1] )<br>)<br>    *Defendant* ) | No. 1:12-cv-399-GZS |

### REPORT AND RECOMMENDED DECISION[2]

In this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal, the plaintiff contends that the administrative law judge impermissibly interpreted raw medical evidence, wrongly rejected the opinion of her treating physician, and failed to seek expert medical advice when it was required. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements for SSD through December 31, 2012, Finding 1, Record at 16; that she suffered from lumbar post-laminectomy syndrome, cervical degenerative disc disease, status post

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 13, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

thoracic outlet syndrome, and asthma, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 17-18; that she had the residual functional capacity ("RFC") to perform light work, except that she could frequently engage in bilateral handling and fingering and must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gases, Finding 5, *id*. at 19; that she was capable of performing her past relevant work as an office manager and administrative clerk, Finding 6, *id*. at 22; and that, as a result, she had not been under a disability, as that term is defined in the Social Security Act, at any time from the alleged date of onset, September 2, 2008, through the date of the decision, December 23, 2011, Finding 7, *id*. The Appeals Council declined to review the decision, *id*. at 1-2, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental

demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 416.920(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

## I. Discussion

### A. Treating Physician's Opinion

The plaintiff contends that the administrative law judge "simply ignored" most of the work-related limitations assigned to her by her treating physician, Dr. Nancy T. O'Neill, thereby violating the requirement that she give good reasons for rejecting each such limitation. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (ECF No. 10) at 7-10. She relies on a form filled out by Dr. O'Neill on February 10, 2011. Record at 421-24.

The administrative law judge addressed Dr. O'Neill's assessment as follows:

> In assessing the residual functional capacity in this decision, the undersigned gives little weight to the opinion of Nancy O'Neill, MD that the claimant is limited to less than sedentary work (9F/15F). Although Dr. O'Neill is the claimant's current primary care provider, she is a family practitioner and is not a specialist in orthopedics or any other area and her assessment of the claimant's impairments is outside of [] her area of expertise. Furthermore, the assessment is not supported by the medical evidence of record, as discussed above.

*Id.* at 21. Prior to this paragraph, the administrative law judge's opinion discusses the medical evidence in almost three single-spaced pages. Among her observations that are inconsistent with Dr. O'Neill's assessment are the following:

- o After a lumbar laminectomy in the 1980s, the plaintiff underwent a caudal epidural steroid injection in 2008 that resulted in excellent improvement in her symptoms. At a follow-up examination, she ambulated well, had good lumbosacral range of motion, and minimal tenderness. A second injection was

not recommended, and the plaintiff was advised to continue physical therapy and home exercise, with follow-up as needed. *Id*. at 20.

- o Treatment for low back pain since the alleged date of onset of disability has been routine and conservative. In March 2009, the plaintiff reported that her chronic pain was better with stretching and she was walking up to two hours five times per week. She reported some shoulder pain and was advised to discontinue using weights until this resolved. She reported an exacerbation of back pain in November 2009, when she pushed her stalled car off the road, and was given an intramuscular injection of Toradol with good effect with ibuprofen and flexeril for pain and muscle spasms. Since November 2009, the plaintiff has treated low back pain with medication and exercise. She has not required any further injections or referrals for pain management. *Id*.
- o The plaintiff underwent a resection of the left first and cervical rib in December 2010. In January 2011, her discomfort in her hand, fingers, and distal arm had completely subsided, with still a bit of discomfort in the trapezius and pectoralis region. She was started on exercise and told to return if necessary. She did not return to that physician. *Id*. at 20-21.

None of this information is consistent with Dr. O'Neill's February 2011 assessment that plaintiff could not carry more than 10 pounds, could stand between two and six hours in an eight-hour workday, could sit less than six hours in an eight-hour workday, and was limited in pushing and pulling with her upper extremities[3] due to "chronic back pain post surgery." Record at 422.

---

[3] Despite the form's direction to "describe nature and degree" of this limitation, Dr. O'Neill did not do so. Record at 422.

4

Nor is it consistent with a limitation to occasional climbing of stairs and ramps, and no climbing of ladders, ropes, or scaffolds "due to back surgery." *Id.*

Similarly, Dr. O'Neill's limitation on reaching in all directions (including overhead) to less than two-and-one-half hours a day because "stretching will put strain on back," *id*. at 423, is inconsistent with the medical evidence listed above. These are sufficient reasons to reject Dr. O'Neill's assigned limitations. Contrary to the plaintiff's argument, an administrative law judge is not required to discuss separately his or her reasons for rejecting each limitation assigned to a claimant by the claimant's treating physician so long as the reasons for rejecting those limitations are adequately stated. *See, e.g.. Evans v. Colvin*, No. 1:12-cv-211-DBH, 2013 WL 1632644, at *3 (D. Me. Mar. 28, 2013).

The plaintiff next contends that, having rejected Dr. O'Neill's conclusions, the administrative law judge could only have "crafted her RFC finding based only on her lay interpretation of the medical evidence and by substituting her lay judgment for that of the Plaintiff's treating physician."[4] Itemized Statement at 9-10. Such action by an administrative law judge is forbidden. *Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990). The opinion itself, however, belies this contention. The finding of "status post-thoracic outlet syndrome," Record at 17, is based on the records of Drs. George J. Wright, III, and Larry Flanagan, *id*. at 20-21. The finding of cervical degenerative disc disease was based on the professional reading of an MRI from March 2010. *Id*. at 17, 20. The finding that asthma was a severe impairment was based on the history of her treatment. *Id*. at 17, 21. Finally, the finding of "lumbar post-laminectomy syndrome" was based on the plaintiff's own reports and medical history. *Id*. at 17, 20.

---

[4] The plaintiff's presentation also ignores the fact that she has had treating physicians other than Dr. O'Neill.

The same is true of the specific limitations included in the RFC assigned to the plaintiff by the administrative law judge. The exclusion of pulmonary irritants is based on the opinion of J. H. Hall, M.D., a state-agency consultant who reviewed the medical records. *Id.* at 19, 21-22. The limitation to frequent bilateral handling and fingering is drawn from the plaintiff's testimony and the records of Drs. Wright and Flanagan, "[g]iving the claimant the benefit of the doubt[.]" *Id.* at 19, 22. The assignment of a light exertional work capacity has the same basis. *Id.*[5]

### B. Substantial Evidence

I have already rejected many of the plaintiff's arguments underlying her contention that the RFC assigned to her by the administrative law judge is not supported by substantial evidence. *Compare* Itemized Statement at 10-12 *with* discussion at pages 3-5 *supra*. I address here only the contentions that have not already been specifically discussed, in the context of my previous finding that the administrative law judge stated sufficient reasons for rejecting Dr. O'Neill's assessed limitations as a whole.

The plaintiff complains that the administrative law judge "failed to explain why she did not adopt Dr. O'Neill's findings with respect to postural limitations, as well as push/pull limitations involving the upper extremities." Itemized Statement at 11. Under the heading "Postural Limitations" Dr. O'Neill limited the plaintiff to occasional stooping, balancing, climbing ramps, and climbing stairs, and never climbing ladders, ropes, or scaffolds, kneeling, crouching, or crawling. Record at 422. The past relevant work as an office manager and as an administrative clerk to which the administrative law judge found that the plaintiff could return

---

[5] The plaintiff's assertion that Dr. O'Neill "was obviously aware" of any inconsistencies between the medical evidence and her conclusions when she "nonetheless" reported those conclusions, thereby requiring the administrative law judge to adopt those conclusions, Itemized Statement at 10, would make it impossible, as a practical matter, for any administrative law judge ever to reject a treating physician's conclusions about work-related limitations caused by severe impairments. This result is contrary to the intent of Social Security law and regulations.

does not require any of these activities. *Id*. at 52-53 (vocational expert testimony); Dictionary of Occupational Titles ("DOT") (U.S. Dep't of Labor rev. 4th ed. 1991) §§ 169.167-034 (office manager) & 219.362-010 (administrative clerk). Therefore, any failure to include these limitations in the plaintiff's RFC, let alone to explain specifically why the administrative law judge rejected them, is harmless.

The same would be true of Dr. O'Neill's statement, also cited by the plaintiff, that the plaintiff's impairment limited pushing and pulling with the upper extremities, had she described the nature and degree of this limitation as the form requires. Record at 422. At least one court has held that a limitation to occasional pushing and pulling with the upper extremities is not inconsistent with the job of office manager. *Wenzlick v. Commissioner of Soc. Sec.*, Civil Action No. 08-12414, 2009 WL 2777714, at *4 (E.D. Mich. July 14, 2009), *rev'd on other grounds* to uphold denial of benefits, *Wenzlick v. Astrue*, Civil Case No. 08-CV-12414, 2009 WL 2777711, at *3 (E.D. Mich. Aug. 28, 2009). In any event, in the absence of any specification of the nature and degree of this limitation, the court cannot find that its omission from the plaintiff's RFC was harmful error. *See also Pike v. Astrue*, No. 1:09CV448, 2011 WL 9300, at *5 (M.D.N.C. Jan. 3, 2011).

The plaintiff next asserts that the administrative law judge "ignored" Dr. O'Neill's limitation, otherwise unexplained, to the effect that the plaintiff was "not able to use machinery." Record at 424; Itemized Statement at 11-12. Neither of the two jobs identified by the administrative law judge as those to which the plaintiff could return involves exposure to vibration or "moving mechanical parts," DOT §§ 169.167-034, 219.362-010, which would appear to be the cause of any concern with the use of machinery. *See generally Burritt v. Astrue*, Civil No. 3:10-cv-01197-JE, 2012 WL 1357669, at *8 (D. Ore. Mar. 28, 2012). Under Social

Security law and practice, limitations concerning machinery are usually limited to hazardous or dangerous machinery. To define "machinery" as used by Dr. O'Neill to include devices generally used in an office setting would be to broaden the limitation unreasonably, particularly when Dr. O'Neill herself made no attempt to describe the range or type of machinery to which she referred.

### C. Further Medical Advice

Finally, the plaintiff contends in brief arguments that the administrative law judge was required to contact Dr. O'Neill to seek clarification concerning the functional capacity limitations she assigned to the plaintiff, Itemized Statement at 8, and to seek expert medical advice "relevant to, among other things, the effects of [the plaintiff's] recently diagnosed thoracic outlet syndrome, which required the surgical removal of two ribs and which the ALJ found was a serious impairment." *Id*. at 12. The latter argument is undeveloped and thus waived, but neither argument could prevail in any event.

The plaintiff places the first argument properly in the subjunctive: "if the ALJ was unclear concerning the bases for Dr. O'Neill's assessed functional capacity limitations, she had an obligation to recontact Dr. O'Neill . . . to seek clarification . . . or to otherwise develop and clarify the issue." *Id*. at 8. The administrative law judge's opinion does not express any lack of clarity about the bases for Dr. O'Neill's stated limitations. The regulation cited by the plaintiff provides that, when information from a treating physician "is inadequate for us to determine whether you are disabled," not "*that* you are disabled," an administration law judge will contact that treating physician when his or her report "contains a conflict or ambiguity that must be resolved." 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1). These conditions are not met in this

8

case. *See generally Bachelder v. Social Sec. Admin. Com'r*, No. 1:09-cv-435-JAW, 2010 WL 2942689, at *5 (D. Me. July 19, 2010).

As for the thoracic outlet syndrome and rib surgery 11 months before the hearing, the administrative law judge properly noted that the plaintiff's discomfort in her hand, fingers, and distal arm "had completely subsided" a month after the surgery, that she was then started on exercises for range of motion and strengthening, presumably to address the "bit of discomfort in the trapezius and pectoralis region" that remained post-surgery, and that, despite instructions to return if necessary, did not return to that physician for any further treatment. Record at 21. The plaintiff apparently expects the court to assume that the thoracic outlet syndrome necessarily caused limitations other than at the light exertional level and regarding frequent, as opposed to constant, bilateral handling and fingering as assigned to her by the administrative law judge. *Id*. The burden of proof remains with the plaintiff at this stage of the proceedings, and she did not introduce any evidence to support this hypothesis.

In addition, as this court has frequently stated, the decision to consult a medical expert or advisor is a matter left to the commissioner's discretion; failure to do so does not provide a basis for remand. *Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *5 (D. Me. Sept. 27, 2012); *Allaire v. Astrue*, Civil No. 08-375-P-H, 2009 WL 3336107, at *7 (D. Me. Oct. 13, 2009).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of September, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge